UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) NO. 4:19 CR 00549 AGF |
| MORGAN BULLOCK, | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by and through Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United States Attorney for said District and, for its Sentencing Memorandum, states to this Honorable Court as follows:

1. Defendant Bullock's criminal conduct calls for a significant punishment. Application of the United States Sentencing Guidelines here advises a sentence of 21 – 27 months' imprisonment. This is based upon defendant's criminal conduct here, and the financial and emotional harm suffered by the individual victims who fell prey to defendant's fraudulent scheme.

2. Title 18, United States Code, Section 3553(a) sets out the factors this Court should consider in fashioning an appropriate sentence. The first such factor to be considered is the nature of the offense, 18 U.S.C. 3553(a)(l).  In this case, defendant held himself out as a respected and accomplished home builder and real estate developer, someone whom individuals could trust in the most important of financial matters, the purchase and construction of their family homes.  In no small way, defendant sold dreams; the dream that every family has to live in a nice home in a good neighborhood where they can raise their children or live out their retirement years.  Through his fraudulent scheme, defendant shattered those dreams, and abused the trust of each of the victims

1

based upon his continuous and ongoing false representations.  Through his criminal conduct, he took advantage of the trust which the individual victims placed in him, and stole almost $400,000 from them.

3. In a nutshell, defendant's fraud scheme involved his marketing of a new home development in Kirkwood, Missouri despite the fact that Kirkwood officials had denied defendant's development proposal and defendant's request for building permits.  Significantly, one of the primary reasons the city denied defendant's development application was defendant's failure to comply with the requirement that he and his company post a performance guarantee, which the city required in order to ensure that defendant did not abandon construction of the home development prior to its completion.  Of course, knowledge of the fact that defendant was unable to obtain the proper performance guarantee from a bank or financial institution would have been a red flag for anyone interested in purchasing one of the proposed homes.  Nevertheless, defendant teamed with a well-known real estate brokerage company and marketed the new homes to individuals without advising the real estate agents or the potential homebuyers that defendant did not have approval or authority from the city to construct the homes at the property in Kirkwood.[1] Defendant took substantial deposit fees from the individual homebuyers based upon his false promises and representations that he would construct their homes within certain timeframes.  Despite promising the homebuyers to use their funds solely in the construction of their homes, defendant used those funds for his own personal expenses and for business expenses totally unrelated to the Kirkwood development.  None of the homes were ever built.

4. Shortly after receiving the last homebuyer's funds during December, 2017,

---

[1] In fact, on August 31, 2017, defendant Bullock and his company withdrew its development application with the City of Kirkwood, never disclosing this to the victim homebuyers.

2

defendant's scheme began to unravel.  Defendant had been spending the funds received from the homebuyers as quickly as he received them on personal and business expenses unrelated to the Kirkwood development.  During January, 2018, defendant's company which had purchased the Kirkwood land declared bankruptcy in an attempt to set off any debt involved in the purchase of that property.  The bankruptcy action was not disclosed to the victim homebuyers.  Over the next several months, defendant lied to the homebuyers repeatedly when their construction deadlines were not met, falsely blaming the City of Kirkwood for the delays, or falsely blaming subcontractors and purported adverse weather conditions for the delays.  Ultimately, due to the continuous delays and after repeated requests for the return of their deposit funds, defendant sent one of the victim homebuyers a $50,000 check.  That check was declined by defendant's bank due to insufficient funds when the victim attempted to deposit it.  Shortly after that, during October, 2018, defendant's lender moved to foreclose on the Kirkwood property due to nonpayment, and defendant's scheme was uncovered.

5.    Defendant's fraudulent conduct caused an actual financial loss to the individual victims of almost $400,000.  Defendant used the victims' funds for his own personal expenses and to prop up business activities totally unrelated to the Kirkwood property, all the time falsely promising the victims that their funds would be held and used solely for the construction of their homes.  In order to avoid discovery of his fraud, defendant lied repeatedly to the victims, all the time using their funds as his own.  Put simply, as information in the Presentence Investigation Report reflects, defendant is a con, and by any standard the defendant's offense conduct here is serious and substantial.

6.    This Court can get a much better understanding of the harm caused by defendant Bullock to the victims and their families in this case by reading letters submitted by some of the

actual victims here.  These poignant letters speak to the financial and emotional harm caused to the victims and their families.  They also speak to the arrogance of defendant Bullock, and the disdain he showed the victims throughout the fraud scheme.  As one victim notes:

> Morgan Bullock never appeared even the slightest bit remorseful about his scam. Even when it became completely obvious that we were victims an intentional fraudulent scam, Bullock remained smug, arrogant, and unphased.  When I informed him that I was going to report him to the authorities, he simply said, "Do what you think you have to do, I don't care.  But you won't get your money back that way."

As this Court has noted in similar fraud cases, there are real victims in this case.  Those victims' letters are attached here as Exhibit A.

      7.      This Court's sentence should also afford adequate deterrence to criminal conduct, 18 U.S.C. 3553(a)(2)(B).  As stated previously, this defendant held himself out to be a trustworthy home builder and real estate developer.  He abused the trust of his many victims in carrying out his fraudulent scheme.  This Court should fashion an appropriate sentence and punishment not only to deter this defendant from future criminal conduct, but in order to deter other individuals in similar positions from committing similar crimes. One need only look to the underlying facts and circumstances in this case, and the harm the criminal conduct caused the victims, to grasp the significance of these types of crimes, and the need for adequate punishment to deter these types of defendants and others.

      8.      As in all cases where a defendant has family and, particularly, children, the harmful impact of this defendant's criminal conduct will also be felt by them, consequences which should have been considered by defendant before he engaged in his fraudulent scheme.  This is not a situation which was created by this Court.  As District Court Judge Sippel stated at the recent sentencing hearing in *United States v. Mitchell Davis*, 4:17-CR-573 RWS, "No one stands where

[defendant] stands at this moment without having a parent, a sibling, a spouse, or a child that will be affected by the conduct.  That should have been a factor that each individual should have considered before they found themselves in these circumstances.  In fact, the guidelines, when they were mandatory – and it's still written in Chapter 5, the Court is not to consider family circumstances in fashioning a sentence.  That's not to say the Court's unsympathetic.  It does have empathy for the situation each individual finds itself, but it doesn't make a specific defendant unique in that regard."  As reported in the Presentence Investigation Report, defendant's wife is able to care for the family's children, with the assistance of her parents and defendant's parents, during any period of defendant's incarceration.  (PSR at paragraph 49)  It is the government's position that defendant's family situation is not a valid basis under the facts and circumstances presented here for leniency from this Court.   Similarly, if defendant is in need of mental health treatment, that should not be the determinative factor considered by this Court in fashioning an appropriate sentence.  Again, as Judge Sippel stated in the October 10, 2018 Mitchell Davis sentencing hearing, "Treatment is certainly *a* factor, but it's not *the* factor…. I'd tell you that a significant number of individuals who stand where [defendant] stands come in this room with a diagnosed mental issue. …it's in the double digits a percentage of the population at the Bureau of Prisons that has already been diagnosed with a significant mental disease or defect.  But that's not *the* factor.  It's *a* factor.  Treatment is *a* factor."  The Bureau of Prisons is well suited to provide any treatment which defendant might benefit from.

      9.     Once defendant's fraud became known to the victim families, they obtained legal advice and were required to file civil lawsuits against defendant in order to attempt to obtain the return of some of their stolen funds.  Various of defendant's family members, as well as the real

5

estate brokerage firm involved in the home sales, paid a portion of the victims' losses here in order to settle those civil lawsuits. Defendant has received the benefit of those settlement funds paid by others in the reduction of any restitution owed to the victims in this criminal case. It is the government's position that the settlement of those civil lawsuits should not be considered by this Court in determining an appropriate and fair sentence in this case, other than for restitution purposes.

10.     Defendant has an advisory guideline sentence under the United States Sentencing Commission Guidelines of 21-27 months in prison. It is the government's position that justice and fairness require such a sentence in this case. Such a sentence by this Court will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for defendant's criminal offenses as is required by 18 U.S.C. 3553(a)(2)(A).

WHEREFORE, the United States of America prays that this Honorable Court sentence defendant to a term of imprisonment within the advisory sentencing guidelines as appropriate under the facts and circumstances presented here, and for such other relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 */s/ Hal Goldsmith*
HAL GOLDSMITH, #32984MO
Assistant United States Attorney
111 S. 10th Street, Room 20.331
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

     I hereby certify that on November 1, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the counsel for defendant.

                                           */s/ Hal Goldsmith*
                                           HAL GOLDSMITH
                                           Assistant United States Attorney