UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| MORGAN BULLOCK, | ) NO. 4:19 CR 00549 AGF ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
POSITION PAPER ON SENTENCING**

Comes now the United States of America, by and through Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United States Attorney for said District and, for its Response to Defendant's Position Paper on Sentencing, states to this Honorable Court as follows:

1.      On July 12, 2019, defendant Bullock pled guilty before this Court, at which time he admitted to having committed a serious crime and defrauding the numerous victims in this case of substantial funds.  Defendant now attempts to paint a much different picture, referring to his intentional fraudulent conduct as, "…the regrettable facts surrounding Mr. Bullock's botched Kirkwood investment…"  (Defendant's Position Paper, p. 1)  In his entire lengthy pleading, defendant makes no mention of the harm he perpetrated upon the victims, and the attendant consequences the victims and their families suffered.  Instead, in a plea for leniency, defendant points this Court to, "…the suffering *he* already has endured as a result of his misconduct…" (Defendant's Position Paper, p. 1)  Defendant goes so far as to argue to this Court that he "…is not a 'swindler'." (Defendant's Position Paper, p. 13)  But that's exactly what defendant has admitted

1

to being in this case, a swindler.  As Merriam-Webster defines, it, "to swindle" is "to obtain money or property by fraud or deceit."  Apply any synonym you wish, this defendant "bilked," "cheated," "conned," "defrauded," "fleeced," or "ripped off" the victims in this case and there is no way for defendant to rewrite the facts here to make his criminal conduct any less substantial or harmful.

2. Defendant now appears to blame the City of Kirkwood, and its building code and permit requirements for his criminal actions here.  The fact is that defendant was fully aware of the city's performance guarantee requirement and, when defendant could not obtain the appropriate letter of credit to meet that requirement, defendant affirmatively withdrew his development plan from the city's review.  Even after withdrawing his development application, defendant defrauded five (5) more homebuyer families, failing to honestly advise them of his failure to obtain the proper approvals and permits, taking their money with the false promises of new homes within the purported development which he knew he did not have permission or funds to build.  The City of Kirkwood's permitting and development requirements are in place precisely to prevent homebuilders such as defendant from engaging in the fraudulent practices involved here.  Unfortunately, defendant chose to ignore those requirements, and through his false representations victimized the potential homebuyers and their families.  Defendant represents now that, "…in an effort to raise the additional funds he needed for Kirkwood's required half-million-dollar cash Performance Guarantee – Mr. Bullock and Coldwell Banker sold five additional lots to prospective homebuyers." (Defendant's Position Paper, p. 6 )  First of all, defendant's company received all of the funds he obtained from the homebuyers through his scheme, Coldwell Banker received nothing.  Second of all, defendant used those illegally obtained funds "for defendant's own personal expenses, and for business expenses unrelated to Emmerson Estates." (Plea Agreement, p. 5) The idea that defendant was somehow accumulating or escrowing the victims' funds in order

2

to obtain the required performance guarantee is simply not true. He stole the funds for his own personal benefit, plain and simple.

      3.      Defendant devotes much of his brief focusing this Court's attention on defendant's family. Defendant cites this Court to *United States v. Chase,* 560 F.3d 828 (8th Cir. 2009), in suggesting that defendant's family obligations form a proper basis for a substantial downward variance here. That case, however, focused on appellant's health issues, not on any issues dealing with appellant's family obligations. Further, defendant points to U.S.S.G., Section 5H1.6 as support for his request for a substantial variance here. However, as that Guideline Section makes clear, "…family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." Application Note 1B(ii) to that Guideline Section also makes clear that "…the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarcerations is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration." And finally, Application Note 1B(iii) requires a Court to find that "…the defendant's caretaking or financial support [is] irreplaceable to the defendant's family" before a departure can be warranted. If there is anything that defendant has made abundantly clear from his Position Paper and from the family letters which he has submitted, defendant's family is in a position to provide financial assistance and caretaking assistance as might be necessary for defendant's wife and children during any period of incarceration. While defendant will certainly be missed during any period of incarceration, there is nothing in the record to suggest that his caretaking or financial assistance is irreplaceable here. It is not uncommon in white collar criminal cases such as this for a defendant to have family obligations. For example, In *United States v. Barbara Skudrzyk,* 4:18-CR-00745-RWS, the District Court sentenced defendant to a guideline

sentence despite defendant's argument that she was a divorced mother of two small children.  In *United States v. Stenger*, 4:19-CR-00312-CDP, defendant had two small children, and a baby on the way.  The District Court sentenced defendant to the upper end of the advisory guideline range, allowing defendant to surrender to the Bureau of Prisons following the birth of his third child.  The government does not suggest that defendant's absence will not have unfortunate consequences for his family.  However, it is the government's position that, under the facts and circumstances here, a substantial variance such as defendant is requesting is not appropriate, and would not result in a fair and just punishment when considering all of the required factors under Title 18, United States Code, Section 3553(a).

      4.      Many of the letters written in support of defendant, when addressing defendant's conduct, suggest that he simply made mistakes.  For example: "Morgan is well aware he has made mistakes…."  "…one who made some terrible, regrettable decisions in his failed Kirkwood subdivision project."  "…has made some bad decisions…."  "…Morgan made poor business decisions and miscalculated financial requirements for the Emerson subdivision build out in Kirkwood…."  "…Morgan has made mistakes…."  Defendant's guilty plea, and the actual facts here, reflect a more accurate picture of what happened.  Defendant wanted to make money developing the property in Kirkwood, but could not meet the city's development requirements.  Instead of walking away, he made false representations to a number of innocent homebuyers and their families who put their full faith and trust in defendant to build their dream homes.  He took their money and used it for his own personal benefit, despite promising that the funds would be used solely for the construction of their homes.  He caused substantial financial and emotional harm to these victims and their families.  His criminal conduct was intentional, and despite defendant's suggestions in his Position Paper, it cannot be blamed upon his age or level of

experience, the City of Kirkwood, the victims requesting their deposits back after months and months of being lied to, or any purported mistaken beliefs on his part. He knew exactly what he was doing, and he did not consider the consequences to the victims.

WHEREFORE, the United States of America prays that this Honorable Court sentence defendant to a term of imprisonment within the advisory sentencing guidelines as appropriate under the facts and circumstances presented here, and for such other relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 */s/  Hal Goldsmith*
HAL GOLDSMITH, #32984MO
Assistant United States Attorney
111 S. 10th Street, Room 20.331
St. Louis, Missouri 63102
hal.goldsmith@usdoj.gov
(314) 539-2200

### CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the counsel for defendant.

 */s/ Hal Goldsmith*
HAL GOLDSMITH, #32984MO
Assistant United States Attorney