**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No:  4:19-CR-0549-AGF |
| ) | |
| MORGAN BULLOCK, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT MORGAN BULLOCK'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S POSITION PAPER ON SENTENCING**

Defendant Morgan Bullock, through his counsel, respectfully submits the following Reply to Government's Response to Defendant's Position Paper on Sentencing ("Govt Resp." at Dkt. 27), primarily to clarify any confusion caused by the undersigned's submission.

The Government's Response submits to the Court that, "In his entire lengthy pleading, defendant makes no mention of the harm he perpetrated upon the victims, and the attendant consequences the victims and their families suffered." (Govt Resp. at ¶ 1). However, the undersigned attempted to convey in Mr. Bullock's Position Paper on Sentencing ("Def.'s Paper" at Dkt. 24), Mr. Bullock's sincere remorse for the harm he perpetrated upon the victims:

- Mr. Bullock is filled with "*sincere remorse*, fully accepting responsibility for his conduct, and *acknowledging without hesitation his actions were wrong and unacceptable*." (Def.'s Paper at p. 2).

- "The fact Mr. Bullock also lost money on the investment *does not lessen the significance or travesty of the victims' losses*." (*Id.* at p. 13).

- Mr. Bullock "'*truly and deeply regrets'* the decisions he made in the failed Kirkwood subdivision project." (*Id.* at p. 14).

- Mr. Bullock is "humbled both by his mistakes *and by the regrettable harm his decisions have caused so many others*." (*Id.* at p. 21).

- Mr. Bullock is "well aware of the shame he has brought upon himself, the embarrassment he has brought upon his family, *and the financial harm he has caused his former clients*." (*Id*. at p. 21).

1

Mr. Bullock has never denied that he defrauded the victims in this case, and he is not attempting "to rewrite the facts here to make his criminal conduct any less substantial or harmful," as the Government suggests. (Govt Resp. at ¶ 1). In fact, nearly every factual sentence in the section of Mr. Bullock's Position Paper entitled "Nature of the Offense" is supported by a citation to the PSR, to which the Government filed no objection. (Def.'s Paper at pp. 3-7). To be clear, in offering that Mr. Bullock is not a "swindler," the undersigned was not denying that Mr. Bullock defrauded the victims. Rather, the statement was made in context of describing the aftermath surrounding Mr. Bullock's conviction in his small town of Camdenton, *all the while further acknowledging the "travesty of the victims' losses"*:

> The news media actually attended Mr. Bullock's guilty plea and waited—with a cameraman—to follow Mr. Bullock departing from the federal courthouse after his plea. Online stories contained salacious, exaggerated, and inaccurate allegations, such that Mr. Bullock "kept the deposits the families had paid for their homes and used it for a *personal spending spree*." (*See* "Lake Area Developer Admits to Swindling Customers" at https://www.krmsradio.com/lake-area- developer-admits-to-swindling-customers/).
>
> Mr. Bullock is not a "swindler." Mr. Bullock *did not make a financial windfall from the Kirkwood investment or spend the deposits on luxuries or a lavish lifestyle or expensive purchases*. The fact Mr. Bullock also lost money on the investment *does not lessen the significance or travesty of the victims' losses*. Now, Mr. Bullock has a negative net worth and negative cash flow, and he even has put his own home up for sale in an effort to fully repay the homebuyers.

(Def.'s Paper at pp. 12-13) (citations to PSR omitted) (emphasis added).

The Government's Response also submits that, "Defendant now appears to blame the City of Kirkwood, and its building code and permit requirements for his criminal actions here." (Govt Resp. at ¶ 2). Again, the undersigned attempted to fully convey that Mr. Bullock is solely at fault—and he blames neither Kirkwood nor anyone else—for not fully educating himself on the potential amount and required cash form of Kirkwood's $533,876 "Performance Guarantee":

> *Mr. Bullock failed to sufficiently research* the potential amount of the Performance Guarantee or the Kirkwood requirements that it be provided either in cash or a letter of

credit the equivalent of cash. *Consequently, by his own fault*, Mr. Bullock was blindsided by the amount and the requirements, which was the equivalent of Mr. Bullock having to more than double-fund the project.

(Def.'s Paper at p. 5).[1]

In addition, Government responds to Mr. Bullock's family circumstances by summarizing guideline sentences imposed in two recent, unpublished, and high-profile cases, *United States v. Barbara Skudrzyk,* 4:18-CR-00745-RWS and *United States v. Stenger*, 4:19-CR-00312-CDP, handled by the same prosecutor assigned to Mr. Bullock's case. As an initial matter, to be clear, *United States v. Stenger*, 4:19-CR-00312-CDP, is the case of Steve Stenger, County Executive of St. Louis County, Missouri, who pleaded guilty and was sentenced for honest services bribery and mail fraud, for steering county business to a campaign donor in exchange for thousands of dollars of contributions. The high-profile case involving Mr. Stenger's corrupt use of his elected position to abuse the public trust of the entirety of St. Louis County for his own gain in no way offers a comparable analysis to Section 3553(a) factors present in Mr. Bullock's case.

Meanwhile, with regard to the *Skudrzyk* case, it impossible for this Court or the undersigned to use it as a point of comparison as we are not privy to the full analysis of the relevant Section 3553(a) facts in that unpublished case. The sentencing memorandum is sealed, along with the PSR, sentencing letters, and the Court's Statement of Reasons, and there also is no available transcript from the sentencing in that case. What little can be gleaned from the Government's description of that case is that the defendant "was a divorced mother of two small children." (Govt Resp. at ¶ 3). One might speculate that the fact that Ms. Skudrzyk's children—unlike Mr. Bullock's

---

[1] The Government's Response also submits that, "The City of Kirkwood's permitting and development requirements are in place precisely to prevent homebuilders such as defendant from engaging in the fraudulent practices involved here." (Govt Resp. at ¶ 1). However, the stated purpose of the Performance Guarantee is, "to replace public improvements damaged by construction activities, and to guarantee significant trees designated to be saved." (Def.'s Paper, Ex. C at ¶ 4).

3

children— already were accustomed to some separation from their mother (due to the divorce), which could have been a factor considered by the Court. However, it is impossible to glean from a sealed sentencing materials, what unique characteristics of Ms. Skudrzyk and the circumstances of her offense were considered by the court in crafting her sentence.[2]

Defendant fully admits that, "During October, November, and December, 2017, despite having withdrawn its application and proposal to develop Emmerson Estates, defendant Bullock and Bullock Building marketed the 8 residential home lots to be built at Emmerson Estates with the assistance of Coldwell Banker." (Guilty Plea Agreement, Dkt. 5, at p. 4) *See also* Dkt. 25, Govt. Sentencing Mem., at ¶ 3; Def.'s Paper at p. 6 ("Mr. Bullock did not directly and honestly disclose to the homebuyers that he had not yet obtained final approval from the City of Kirkwood to begin construction on any lots besides A.C. and S.C.'s."); Govt Resp. at ¶ 4 ("Defendant wanted to make money developing the property in Kirkwood, but could not meet the city's development requirements. Instead of walking away, he made false representations to a number of innocent homebuyers and their families who put their full faith and trust in defendant to build their dream homes.").

The fact that Mr. Bullock's Position Paper "offers [an] analysis of the relevant sentencing factors that the Court must consider under § 3553(a)," including his personal history and characteristics, his dedication to his family and his community, the nature of his conduct, the

---

[2]  In contrast to Government's offering of the sealed and unpublished case of *United States v. Barbara Skudrzyk,* 4:18-CR-00745-RWS, Mr. Bullock's Position Paper cites published cases incorporating analyses of Section 3553 factors similar to Mr. Bullock's as grounds for a downward variance from the advisory guideline range. *See, e.g.*, *United States v. Howe*, 543 F.3d 128, 137 (3d Cir. 2008) (affirming downward variance from Guidelines range of 18 to 24 months' imprisonment to probation justified by the following reasons: "(1) *Howe led an honorable and lawful life until this point and had no prior criminal history*; (2) Howe served in the U.S. Military for 20 years; (3) *Howe was a well-regarded member of his community*; (4) Howe regularly attends church; (5) *Howe was a devoted husband, father, and son*; (6) *Howe made but an isolated mistake in committing his crime*; and (7) *Howe was remorseful at sentencing*.") (emphasis supplied; internal quotations and brackets omitted).

4

strides he has made to repay a significant amount of restitution prior to sentencing, and his otherwise commendable life, does not change or minimize the fact that, "Mr. Bullock recognizes the seriousness of the offense and of his conduct. He acknowledges and accepts responsibility for the crime he has committed. . . Mr. Bullock does not, in any way, justify his actions—he understands the gravity of his mistakes, accepts full responsibility for his failures, and is remorseful for his poor decisions that has impacted the lives of others." (Def.'s Paper at p. 3).

I.  **CONCLUSION**

Mr. Bullock respectfully requests the Court impose a sentence of probation for whatever duration and terms and conditions—including home incarceration and community service—the Court deems appropriate.

Dated: November 6, 2019              Respectfully submitted,

By: */s/ Michelle D. Nasser*
    Michelle D. Nasser #68952MO
    **DOWD BENNETT LLP**
    7733 Forsyth Blvd., Suite 1900
    St. Louis, Missouri 63105
    (314) 889-7300 (telephone)
    (314) 863-2111 (facsimile)
    mnasser@dowdbennett.com

    *Attorney for Defendant Morgan Bullock*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 6, 2019, the foregoing document was filed with the Clerk of Court using the CM/ECF system.

                                                   */s/ Michelle D. Nasser*